IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-78-JG

WINDY HARRIS-ROGERS, )
)
Plaintiff, )
)
v. ) **ORDER**
)
FERGUSON ENTERPRISES, et al., )
)
Defendants. )

This case comes before the court on the motion for summary judgment by defendants Ferguson Enterprises ("Ferguson"), Christine Tingen ("Tingen"), Terri Hollowell ("Hollowell"), and Sharon Cooper ("Cooper") (collectively "defendants") (D.E. 32) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Windy Harris-Rogers ("plaintiff"), who is proceeding *pro se*, opposes the motion. The motion is fully briefed.[1] For the reasons set forth below, the motion will be allowed.

## BACKGROUND

Plaintiff commenced this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl. (D.E. 9) ¶ 3). Plaintiff was employed by Ferguson, a plumbing wholesale business, beginning on 5 August 2002. (*Id.* ¶ 5B). Plaintiff claims that she was discriminated against on the basis of her race and in retaliation for

---

[1] In support of their motion, defendants filed a memorandum (D.E. 33) with exhibits (D.E. 33-1 through 33-12). Plaintiff filed a memorandum in opposition (D.E. 39 with exhibits (D.E. 39-1 and 39-2)). Defendants filed a reply memorandum (D.E. 40) and plaintiff filed a surreply (D.E. 41).

protected conduct when she was terminated from her employment on 25 March 2008. (*Id.* ¶¶ 4, 5, 6).

The undisputed facts underlying plaintiff's claims include the following. Plaintiff is an African-American female who worked at Ferguson in, among other positions, that of showroom customer coordinator. (Pl.'s Dep. (D.E. 33-2, 33-3, 33-4) 30:16-18). Plaintiff's job duties as showroom customer coordinator included greeting customers, scheduling appointments, answering the phone, assisting with preparation of customer portfolios, and reminding customers of appointments. (*Id.* 30:19-31:7). Plaintiff concedes that her position did not allow her to set prices for customers or review sales orders of other sales staff. (*Id.* 31:25-32:8, 43:4-22, 46:2-20).

Hollowell was plaintiff's direct supervisor and Ferguson's showroom manager at the Raleigh location where plaintiff was employed. (*Id.* 32:11-33:7). Tingen served as Ferguson's showrooms manager (*id.* 32:16-20), and Cooper was the general manager for all of the Raleigh network locations (*id.* 33:8-24).

On 24 March 2008, another African-American Ferguson employee, Krystal Stinson ("Stinson"), advised plaintiff that Douglas Loew ("Loew"), the Operations Manager, was badgering her to find her own coverage for days she needed to be out of the office. (*Id.* 71:19-23). Stinson forwarded emails she received from Loew to plaintiff. (*Id.* 70:12-16). Plaintiff, intending to respond to Stinson, mistakenly sent a reply email ("mass email") to a mass distribution list for all of the Raleigh network locations of the company, including management personnel, with comments encouraging Stinson to contact Human Resources about Loew. (*Id.* 69:14-23). The email read:

> HAY SIS DO U HAVE AN EMAIL WITH ERRRRRRRRRRRRRRR BODY ON IT? IF SO FORWARDED IT TO ME SO WE CAN MAKE OLD BOY HAPPY lol
> . . .

> He's a trip, I checked out how and what he said in response to my email, he tried to make u look bad or should I say cause some confusion between us. Lol . . . him don't know who we know. Please consider contacting HQ, otherwise he will continue to harasses you on everything, he's pissed that you sent Sharon [Cooper] the email, although she didn't handle it as she shouold have, u best believe she stepped to him so he aint feeling thatl but he need to feel a little more from HR, can't be harassing associates about something that MANAGEMENT handles. He need to be HOOKED UP REALLY GOOD, let me know and I'll proceed with my letter for you.

(Mass Email (D.E. 33-8) (misspellings in original)).

Cooper became aware of plaintiff's mass email and planned to speak with her about it the following morning. Prior to her meeting with plaintiff, Cooper also learned that plaintiff had sent an email to a Ferguson customer ("customer email") less than a week earlier that misstated plaintiff's authority and was critical of Ferguson sales personnel. (Cooper Aff. (D.E. 33-1) ¶¶ 10, 14). The customer email stated in relevant part:

> I took a quick look over that appliance quote and the numbers look pretty good but I'll take time to review it on on take a look at it again on Thursday and touch basis with you then.
>
> I really hate that Dorothy [a Ferguson saleswoman the customer had been working with] is your contact for plumbing fixtures, she good but she want have an eye for what you are trying to do so I'll just keep searching and forward things to you and you can have her to add it to your quotes, I'll keep a check on the pricing as well, sometimes they really mark things up around here especially if they think you can afford to pay.

(Customer Email (D.E. 33-9)).

On the morning of 25 March 2008, the day after the mass email had been sent, plaintiff was called to Tingen's office. (Pl.'s Dep. 99:20-100:9). Plaintiff, Tingen, and Cooper were present for the meeting. (Id. 106:13-17). The mass email and the customer email were discussed with plaintiff at this meeting. (Id. 106:18-107:8, 121:3-18). Plaintiff was informed that her mass email made everyone in her branch look bad and that she was being terminated. (Id. 106:18-107:23).

3

Defendants deny any discriminatory animus in their decision to terminate plaintiff or any other wrongdoing. (*See generally* Defs.' Ans. (D.E. 19)). After the close of discovery, defendants timely filed their motion for summary judgment.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD OF REVIEW

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the nonmoving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The nonmoving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

In employment discrimination cases, "[t]o overcome a summary judgment motion based upon direct or indirect evidence of discrimination, the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Shelton v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:05CV520-H, 2006 WL 3454859, at *4 (W.D.N.C. 29 Nov. 2006) (internal citations omitted). The Supreme Court has held that trial courts should not analyze discrimination claims any differently than other ultimate questions of fact for purposes of a summary judgment, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), although "[c]ourts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues." *Curry v. Guardian Indus. Corp.*, No. 05:2054-JFA-JRM, 2007 WL 172510, at *3 (D.S.C. 18 Jan. 2007). With this standard in mind, the court now turns to the burden-shifting framework and other principles developed by the courts for Title VII cases.

## II. PRINCIPLES OF TITLE VII LITIGATION

### A. Race Discrimination Claims

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can pursue a claim for employment discrimination pursuant to Title VII by producing either direct evidence or circumstantial evidence that raises a genuine issue of material fact that an employer's actions were motivated by discriminatory intentions. *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 859-60 (M.D.N.C. 2003) ("To prove his claims, Plaintiff may rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence.").

In the absence of direct evidence of animus based on race, as here, the court analyzes a claim of employment discrimination under the burden-shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Rishel*, 297 F. Supp. 2d at 860 ("In this case, Plaintiff has only offered indirect evidence of discrimination. Therefore, under the traditional principles of federal employment-discrimination law, Plaintiff must use the three-step indirect method of proof established by the Supreme Court in *McDonnell Douglas*.").

Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* showing of adverse employment action based on race. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). In order to do so, a plaintiff must allege sufficient facts to show that she: (1) belongs to a protected class; (2) suffered adverse employment action; (3) was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Mascone v. American Physical Society, Inc.*, 404 Fed. Appx. 762, 763 (4th Cir. 2010); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). The burden of establishing a *prima facie* case is not an onerous one. *Evans*, 80 F.3d at 960.

Once a plaintiff has made the *prima facie* showing, he has established a rebuttable presumption of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Evans*, 80 F.3d at 959. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. *Evans*, 80 F.3d at 959. If the employer can establish a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the legitimate reason offered by the defendant was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 415-17 (4th Cir. 1998). Pretext can

6

be established with evidence that the employer's explanation for an employment decision is "unworthy of credence" or is false. *Reeves*, 530 U.S. at 147. To survive summary judgment, the plaintiff must establish the presence of issues of fact as to whether the defendant's explanation is pretextual. *Burdine*, 450 U.S. at 255, n.10.

### B. Retaliation Claims

The retaliation provision of Title VII makes it unlawful for an employer to discriminate against an employee for engaging in protected activity, which includes: (1) "oppos[ing] any practice made an unlawful employment practice by this [statute]" ("the opposition clause"); or (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this [statute]" (the "participation clause"). 42 U.S.C. § 2000e-3(a).

As with her claims of race discrimination, the *McDonnell Douglas* framework is applied to plaintiff's claims of retaliation. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002). To establish a *prima facie* case of retaliation, "[a plaintiff] must prove three elements: first, that she engaged in protected activity; second, that an adverse employment action was taken against her; and third, that there was a causal link between the protected activity and the adverse employment action." *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004); *accord McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991). "[A] causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Once the plaintiff establishes a *prima facie* case of retaliation, the court analyzes whether the employer has produced a legitimate, nondiscriminatory reason for the employer's action and, if so, whether the employee can show that the reason is pretextual. *See Lettieri v. Equant Inc.*, 478 F.3d

7

640, 651 (4th Cir. 2007) ("The [burden shifting part] of the *McDonnell Douglas* analysis for [the plaintiff's] retaliation claim proceeds as it did under her discrimination claim.").

## III. PLAINTIFF'S RACE DISCRIMINATION CLAIM

Plaintiff has failed as matter of law to make out a *prima facie* case of race discrimination. Although it is not disputed that she is a member of a protected class, African-Americans, and suffered an adverse employment action, termination, she conceded at her deposition that she was not terminated because of her race. (*See* Pl.'s Dep. 69:12-23 ("I believe I was terminated because I accidentally sent a mass e-mail to the entire Branch 15 . . . ."), 123:14-17 ("Do you believe the company terminated you, though, because you're black?" "No, I believe I was terminated because of the mass–for retaliation because of the email"), 124:10-13 ("[Y]ou said you were terminated not because of the color of your skin, but you were terminated because you sent this mass e-mail." "Yes."). Moreover, nowhere in her response (D.E. 39) or surreply (D.E. 41) to defendants' motion for summary judgment does she offer any grounds for a race-based claim. Rather, plaintiff expressly states that she believes that she "was terminated due to retaliation over a mass email." (Pl.'s Resp. 1; Pl.'s Surreply 1 ("The Defendants know that they terminated me because I mistakenly sent the mass email to each associate of Branch 15.")). Because the record establishes that plaintiff cannot make out a *prima facie* case of race discrimination, her race discrimination claim fails and the portion of defendants' motion seeking its dismissal will be allowed.

## IV. PLAINTIFF'S RETALIATION CLAIM

Defendants' motion and the record together suggest three potential bases for summary judgment on plaintiff's claim for retaliation: (1) plaintiff did not exhaust her administrative remedies; (2) she failed to establish a *prima facie* case because she did not participate in a protected

8

activity; and (3) defendants had a legitimate nondiscriminatory reason for her termination that she did not show to be pretextual. The court will address each of these potential grounds in turn.

A. **Exhaustion of Administrative Remedies**

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *See Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (holding that lack of factual nexus between civil complaint and administrative charge precludes plaintiff from litigating claim). The contents of the EEOC charge establish the permissible scope of a plaintiff's federal lawsuit. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963. A party's failure "to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones*, 551 F.3d at 300. Because administrative charges are generally not drafted by attorneys, however, courts construe them liberally and assess the "reasonable scope" of the administrative investigation spawned by the charges asserted. *Storkamp v. Geren*, 5:06-CV-339-F, 2009 WL 2515555, at *4-5 (E.D.N.C. 14 Aug. 2009).

Here, in her EEOC charge (D.E. 33-7), plaintiff alleges discrimination solely on the basis of race. Specifically, of the boxes on the charge form for indicating the type of discrimination alleged, only the box for racial discrimination is checked; the box for retaliation is not checked. In addition, the narrative refers to only racial discrimination and the customer email, but does not mention at all the mass email, which, as indicated, plaintiff contends prompted the alleged retaliation. There is no mention of retaliation in any other portion of the charge. There can be no question that plaintiff was

9

aware of her alleged retaliation claim and the facts underlying it at the time her EEOC charge was filed.

For these reasons, the court finds that plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim, and the court lacks jurisdiction over it. Plaintiff's retaliation claim is therefore subject to dismissal pursuant to defendants' summary judgment motion on this basis alone. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis–such as race–and he introduces another basis in formal litigation–such as sex."); *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (affirming summary judgment on retaliation claim where plaintiff did not check retaliation box on charge form and the narrative explanation made no mention of retaliation); *Bott v. US Airways, Inc.*, No. 3:09-cv-113, 2009 WL 1686801, at *3 (W.D.N.C. 15 Jun. 2009) (dismissing retaliation claim for failure to exhaust administrative remedies where plaintiff neither checked the retaliation box nor mentioned any retaliatory action).

### B. Sufficiency of Plaintiff's *Prima Facie* Showing of Retaliation

Notwithstanding plaintiff's fatal failure to exhaust her administrative remedies, the court will proceed with an analysis of the sufficiency of plaintiff's *prima facie* case. As noted, one of the elements of a *prima facie* showing of retaliation a plaintiff must make is engagement in protected activity. The record here shows that plaintiff has not created a genuine issue that she did engage in any such activity.

Specifically, plaintiff's mass email does not constitute protected activity under either the participation clause or the opposition clause of Title VII. To qualify as participation, an employee must be making a charge, testifying, assisting, or participating in an investigation, proceeding, or

10

hearing under Title VII. *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Conduct which constitutes participation is deemed to be protected activity regardless of whether the activity is reasonable. *See Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 413-15 (4th Cir.1999). There is no evidence indicating that the mass email (or any other conduct by plaintiff prior to her termination) qualified in any way as participation in an EEO claim. Accordingly, for the mass email to be protected activity, it must be cognizable as opposition activity.

"To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259 (internal citations omitted); *see also Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 129 S. Ct. 846, 850-51 (2009) (finding "an ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee" given in response to an employer inquiry as a protected opposition activity); *Pitrolo v. County of Buncombe*, No. 07-2145, 2009 WL 1010634, at *3 (4th Cir. 11 Mar. 2009) ("We have typically found these informal complaints to be protected when they are made by the employee to the employer."); *Curry v. BlueCross BlueShield*, No. 3:09-CV-2718, 2010 WL 6182356, at *5 (D.S.C. 14 Oct. 2010) (Report and Recommendation) ("To establish that she engaged in protected opposition activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed has occurred or was occurring."), *adopted*, 2011 WL 939199 (16 Mar. 2011). Unlike for participation activities, for opposition activities the court employs a balancing test which balances the purpose behind Title VII of enabling employees to engage in activities opposing discrimination and Congress's desire to allow employers to maintain control over

11

the selection and management of its employees. *Laughlin*, 149 F.3d at 259 ("[T]he scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause.").

Here, plaintiff admits that she intended to send the mass email solely to Stinson and only mistakenly sent it to a broader audience that included management personnel. Therefore, it cannot be said that the mass email was sent with the intention of voicing opposition about Ferguson's employment policies, that is, to bring attention to any purported discriminatory activities by Ferguson. The mass email therefore does not qualify as opposition activity. *Pitrolo*, 2009 WL 1010634, at *3 (holding that plaintiff's complaints to her father did not qualify as protected activity where there was no evidence that she intended him to relay the complaints to her employer, holding "it would not be reasonable to characterize a private complaint to a close family member as an informal grievance procedure under *Laughlin*.").

Furthermore, even if plaintiff had intentionally sent the mass email to Ferguson supervisors, no evidence other than conclusory statements by plaintiff[2] has been presented that Loew's nagging of Stinson (Pl.'s Dep. 71:19-23[3]) to find her own replacement was discriminatory in nature. General complaints about a supervisor's conduct, unrelated to discrimination, are not properly considered opposition activity. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general

---

[2] At her deposition, plaintiff was asked, "Now, do you believe that – that Mr. Loew asking Ms. Stinson to find her own replacement was – was somehow related to her race?" Plaintiff answered, "I'm not sure about that. I don't know how to answer that because he did have issues with African-Americans. So I would say yes." (Pl.'s Dep. 71:24-72:4). In further questioning, she admitted that Loew was rude and brusque with both white and African-American employees. (*Id.* 77:18-78:1).

[3] At her deposition, plaintiff was asked how she defined harassment in the context of Loew's conduct toward Stinson and she answered, "Constantly nagging you about the same thing that you've already pretty much answered." (Pl.'s Dep. 71:19-23). She reiterated that later when she was asked, "You say the word 'harass,' but you're really sort of saying 'nagging.'" Plaintiff replied, "Nagging her– yes, I should say nagging–nagging her about finding her own replacement when nobody, since I had ever been employed there, has ever had to do that." (*Id.* 86:20-25).

12

bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII."); *Laughlin*, 149 F.3d at 260 ("Title VII was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work."); *McCallum v. Billy Graham Evangelistic Ass'n*, 3:09CV381-RLV, 2011 WL 3438756, at *8 (W.D.N.C. 5 Aug. 2011) ("Indeed, Title VII is not intended to be a general whistleblower statute for redress of the panoply of wrongs that may occur in the workplace.").

The court concludes that the mass email was not opposition activity, that she therefore did not engage in protected activity, and that on this basis plaintiff failed to establish a *prima facie* case as a matter of law. This failing provides an independent basis upon which to dismiss plaintiff's retaliation claim pursuant to defendants' motion.

### C. Sufficiency of Showings of Legitimate Nondiscriminatory Reasons and Pretext

If plaintiff were deemed to have made a sufficient *prima facie* showing, the burden under the *McDonnell Douglas* framework would then shift to defendants to come forward with legitimate nondiscriminatory reasons for terminating plaintiff. Defendants point to plaintiff's customer email as the main reason for her termination.

Specifically, defendants contend that plaintiff's email containing derogatory comments about a Ferguson employee to a customer was highly inappropriate. Moreover, the email also implied that Ferguson overcharges its customers based on an ability to pay and represented that plaintiff had the authority to affect pricing when she did not. Indeed, at her deposition, plaintiff herself conceded that sending the customer email constituted insubordination, was grounds for termination pursuant to Ferguson's policies, and at the meeting on 25 March 2008 she was told the customer email was the

13

reason for her termination. (Pl.'s Dep. 111:9-15, 121:5-122:2). These reasons advanced by defendants for plaintiff's termination are supported by evidence of record, as variously cited herein. The court therefore finds that defendants have presented sufficient evidence to show for purposes of summary judgment that there were legitimate nondiscriminatory reasons for the decision to terminate plaintiff.

Given that defendants have put forth legitimate, nondiscriminatory reasons for plaintiff's termination, plaintiff must present evidence that the reasons proffered were pretextual and that discrimination was the real motivation for defendants' actions. Plaintiff has failed to make this showing.

Plaintiff relies largely on her contention that it was the mass email and not the customer email that was the reason for her termination. She contends that she was given satisfactory performance reviews, even after sending the customer email, and that it was not until she sent the mass email that she was terminated because it made her branch look bad to others outside of the branch. However, even if it is true that the mass email was the underlying reason for her termination, that fact alone would not establish pretext. *See Hoyle v. Freightliner, LLC*, – F.3d – , 2011 WL 1206658, at *12 (4th Cir. 1 Apr. 2011) (finding no pretext where plaintiff presented no evidence that she was not terminated for the reasons defendant stated). Fatal to plaintiff's argument is the absence of any evidence that it was her opposition to discriminatory practices, as opposed to public criticism of a supervisor, that resulted in her termination. This critical link is lacking and precludes plaintiff from establishing pretext. No other probative evidence of discriminatory animus has been presented.

The court concludes that plaintiff has failed as a matter of law to establish that the reasons advanced by defendants for the decision to terminate her were a pretext and that such termination

was instead the result of impermissible retaliation. Plaintiff's failure to show pretext provides yet another independent basis for dismissal of plaintiff's retaliation claim pursuant to defendants' summary judgment motion.

## V. CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Defendants argue in the alternative that plaintiff's claims against the individual defendants fail as a matter of law because any Title VII claims plaintiff has can be brought against only her employer and not supervisory personnel under *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177 (4th Cir. 1998) and its progeny. The court need not address this alternative basis for defendants' motion in light of the court's determination that plaintiff's claims fail on the merits, and it declines to do so.

## CONCLUSION

For the foregoing reasons and taking the facts in the light most favorable to plaintiff, the court concludes that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56, dismissing all of plaintiff's claims. Defendants' motion for summary judgment is therefore GRANTED, and the court directs that judgment be entered DISMISSING this case with prejudice.

This, the 26th day of September 2011.

James E. Gates
United States Magistrate Judge

15

Case 5:09-cv-00078-JG   Document 42   Filed 09/26/11   Page 15 of 15